IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THEODORE WILLIAMS, DENNIS McLAUGHLIN, JR., CHARLES CRAIG, CHARLES ROBINSON, EDWARD GASDICK, and FRANK TROMBETTA, individually and on behalf of others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>LESLIE S. RICHARDS, Secretary of Pennsylvania Department of Transportation, in her individual capacity; SCOTT CHRISTIE, Deputy Secretary for Highway Administration, Pennsylvania Department of Transportation, in his individual capacity; H. DANIEL CESSNA, District Executive, District 11, Pennsylvania Department of Transportation, in his individual capacity; and ANGELO PAMPENA, Senior Highway Maintenance Manager in District 11 of the Pennsylvania Department of Transportation in his individual capacity.<br><br>　　　　　　Defendants. | Civil Action No.: 16-cv-00525-MPK<br><br>Class Action<br><br>JURY TRIAL DEMANDED<br><br>Chief Magistrate Judge Maureen P. Kelly<br><br>Electronically Filed |

**COLLECTIVE ACTION FIRST AMENDED COMPLAINT**

**INTRODUCTION**

　　1.　　This collective action is brought by certain individuals employed to work within Allegheny County on transportation-related construction and maintenance projects by their joint employers, the Pennsylvania Department of Transportation ("PennDOT") and Defendants Leslie S. Richards, Scott Christie, H. Daniel Cessna, and Angelo Pampena.  Allegheny County is part of PennDOT District 11, which also includes Beaver and Lawrence Counties.  Plaintiffs bring this action on behalf of themselves and others similarly situated (together, "Collective Class," as

1

more fully defined below).  Defendants Richards, Christie, Cessna and Pampena have supervisory authority over the Collective Class members as well as operational authority over their job functions.  Defendants either implemented or knowingly tolerated a practice of neither recording, nor paying for, the time Collective Class members spent maintaining and performing various recordkeeping functions for PennDOT heavy equipment and vehicles and transporting them between regional storage facilities ("Yards" or "Sheds") and locations ("Worksites," as more fully defined below) within Allegheny County before and after their work shifts at the Worksites begin and end.  Defendants' failure to keep accurate time records of all time Collective Class members have worked, and to pay them accordingly, including for overtime due to them, is a deliberate violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA").  Defendants' conduct also conflicts with PennDOT's general policy of paying such employees for all time worked which, on information and belief, PennDOT follows in other geographical areas of the Commonwealth.  Additionally, Defendants retaliated against Plaintiffs for initiating this lawsuit by changing a District 11 policy regarding the storage of PennDOT vehicles and by making improper, coercive, and threatening statements to members of the Collective Class with the apparent intent to incite anger towards Plaintiffs among their coworkers.

2. Members of the Collective Class work or previously worked for PennDOT and Defendants as Transportation Equipment Operators and Highway Maintenance Workers and, on information and belief, in other job categories in Allegheny County within the last three years. Plaintiffs and members of the Collective Class were tasked with transporting PennDOT vehicles and equipment to and from PennDOT's Yards or Sheds, performing minor maintenance on those

vehicles, and keeping records relating to the vehicles prior to the beginning and subsequent to the end of their shifts at the Worksites.

3. On behalf of the members of the Collective Class who opt in to this litigation, Plaintiffs seek to recover unpaid wages, overtime wages, and liquidated damages at the appropriate straight time and overtime rates for the time they spend transporting and maintaining PennDOT vehicles and equipment prior and subsequent to their regular shifts, as well as other appropriate relief. Members of the Collective Class also seek compensatory damages for the harm they have suffered as a result of Defendants' retaliatory actions after the Complaint in this matter was filed.

## PARTIES

4. Plaintiff Theodore Williams is an adult individual who resides in Allegheny County, Pennsylvania, and who worked for PennDOT and Defendants from 1980 to March 2016 as a Transportation Equipment Operator in Allegheny County. Plaintiff Williams has consented in writing to be a plaintiff in this FLSA action pursuant to 29 U.S.C. § 216(b). His consent appears on the docket at Dkt. 1, Ex. A.

5. Plaintiff Dennis McLaughlin, Jr., is an adult individual who resides in Washington County, Pennsylvania, and who has worked for PennDOT and Defendants as a Transportation Equipment Operator in Allegheny County since approximately 2000. Plaintiff McLaughlin has consented in writing to be a plaintiff in this FLSA action pursuant to 29 U.S.C. § 216(b). His consent appears on the docket at Dkt. 1, Ex. B.

6. Plaintiff Charles Craig is an adult individual who resides in Allegheny County, Pennsylvania, who has worked for PennDOT and Defendants for approximately 24 years as a Transportation Equipment Operator in Allegheny County. Plaintiff Craig has consented in

writing to be a plaintiff in this FLSA action pursuant to 29 U.S.C. § 216(b).  His consent appears on the docket at Dkt. 1, Ex. C.

7. Plaintiff Charles Robinson is an adult individual who resides in Allegheny County, Pennsylvania, who has worked for PennDOT and Defendants as a Transportation Equipment Operator in Allegheny County for approximately ten years.  Plaintiff Robinson has consented in writing to be a plaintiff in this FLSA action pursuant to 29 U.S.C. § 216(b).  His consent appears on the docket at Dkt. 1, Ex. D.

8. Plaintiff Edward Gasdick is an adult individual who resides in Allegheny County, Pennsylvania, who has worked for PennDOT and Defendants in Allegheny County as a Highway Maintenance Worker since 2013.  Plaintiff Gasdick has consented in writing to be a plaintiff in this FLSA action pursuant to 29 U.S.C. § 216(b).  His consent appears on the docket at Dkt. 1, Ex. E.

9. Plaintiff Frank Trombetta is an adult individual who resides in Allegheny County, Pennsylvania, who has worked for PennDOT and Defendants in Allegheny County as a Transportation Equipment Operator since in or about 2000.  Plaintiff Trombetta has consented in writing to be a plaintiff in this FLSA action pursuant to 29 U.S.C. § 216(b).  His consent appears on the docket at Dkt. 1, Ex. F.

10. Defendant Leslie S. Richards is the Secretary of the Pennsylvania Department of Transportation.  Secretary Richards is charged with overall administration of PennDOT and has authority over all of PennDOT's officials, supervisors and employees including those in District 11. On information and belief, she is responsible for developing, implementing, administering and overseeing Departmental personnel, policies and practices, including those having to do with wage payment, and compliance with state and federal law, including the Fair Labor Standards

Act, and including with regard to record-keeping. She also exercised operational control over PennDOT and had authority to make decisions on behalf of the agency. Plaintiffs are informed and believe and on that basis allege that Ms. Richards knew or should have known about the occurrences herein alleged and did not take action to correct them, and is therefore responsible for class members' injuries which were proximately caused by her conduct. Based on all these factors and others identified in this Complaint, Ms. Richards had authority over members of the Collective Class, she acted directly or indirectly in the interest of PennDOT, and she is an employer of members of the Collective Class. She is sued in her personal capacity.

11. Defendant Scott Christie is the Deputy Secretary for Highway Administration for PennDOT and has an office in Dauphin County, Pennsylvania. On information and belief, his responsibilities include oversight of maintenance, operations, design and construction of highways and bridges under PennDOT's jurisdiction, and has oversight and operational responsibility over Plaintiffs' employment, including the manner in which they are paid and with respect to record-keeping. He also exercised operational control over PennDOT and had authority to make decisions on behalf of the agency. Plaintiffs are informed and believe and on that basis allege that Mr. Christie is responsible in some manner for the occurrences herein alleged, and that class members' injuries were proximately caused by his conduct. Based on all these factors and others identified in this Complaint, Mr. Christie has authority over members of the Collective Class and is an employer of the Collective Class members. He is sued in his personal capacity.

12. Defendant H. Daniel Cessna is the District Executive for PennDOT District 11 and has an office in Allegheny County, Pennsylvania. Plaintiffs are informed and believe that Defendant Cessna's responsibilities include overall responsibility with regard to the budget and

payroll of PennDOT employees within District 11, including operational supervision of Defendant Pampena and those who work within Allegheny County, including Plaintiffs, and with respect to record-keeping.  He also exercised operational control over PennDOT and had authority to make decisions on behalf of the agency.  Plaintiffs are informed and believe and on that basis allege that Mr. Cessna is responsible in some manner for the occurrences herein alleged, and that Plaintiffs' injuries were proximately caused by his conduct.  Based on all these factors and others identified in this Complaint, Mr. Cessna had authority over members of the Collective Class, and he is an employer of members of the Collective Class.  He is sued in his personal capacity.

       13.     Defendant Angelo Pampena is the Senior Highway Maintenance Manager for the Allegheny County Maintenance District in PennDOT District 11 and has an office in Allegheny County, Pennsylvania.  As such he has operational authority and control over Plaintiffs and the work they perform, including the manner in which they are compensated for transporting and maintaining equipment and vehicles and recordkeeping prior to and after the starting and ending times of their shifts at the Worksites.  He also exercised operational control over PennDOT and had authority to make decisions on behalf of the agency, including, on information and belief, the power to hire and fire members of the Collective Class.  Plaintiffs are informed and believe that Mr. Pampena is responsible for initiating and administering the practices complained of in this Complaint with the approval of Defendant Cessna and the acquiescence of the other Defendants, and that therefore Mr. Pampena is responsible for the occurrences herein alleged, and that Plaintiffs' injuries were proximately caused by his conduct.  Based on all these factors and others identified in this Complaint, Mr. Pampena had authority over members of the

Collective Class, and he is an employer of members of the Collective Class. He is sued in his personal capacity.

14. Plaintiffs are informed and believe and on that basis allege that at all material times, each of the Defendants has acted as an employer and/or a joint employer within the meaning of § 3(d) of the FLSA, 29 U.S.C. § 203(d).

## JURISDICTION AND VENUE

15. The FLSA authorizes lawsuits by private parties to recover damages for violations of its wage and hour provisions. This Court has jurisdiction over Plaintiffs' FLSA claim pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

16. Venue in this district is proper pursuant to 28 U.S.C. § 1391 as PennDOT maintains its District 11 office and operations in this judicial district, Defendants Cessna and Pampena have offices in this district, all Plaintiffs and to Plaintiffs' knowledge most of the potential opt-ins are or were employed in or reside in this district, and a substantial part of the events and omissions giving rise to the Plaintiffs' claims occurred in this district.

## FACTS

17. PennDOT is responsible, *inter alia*, for the construction and maintenance of Commonwealth roads and highways in the Commonwealth of Pennsylvania.

18. PennDOT is organized into a Central Office in Harrisburg and eleven Engineering Districts located throughout the state.

19. Defendant Cessna is the District Executive in charge of District 11, which, as stated, covers Allegheny, Beaver, and Lawrence Counties. He reports directly to Defendant Christie, the Deputy Secretary for Highway Administration. Mr. Cessna has control of the planning, design, construction and maintenance of the state-maintained transportation network in

District 11.  He also has operational control of budgeting, personnel assignments, and performance review.  He is responsible for: supervising Defendant Pampena;  supervising PennDOT employees in Allegheny County, including members of the Collective Class; and payroll practices affecting PennDOT employees in Allegheny County, including those at issue here.

20. Defendant Angelo Pampena is the Allegheny County Maintenance Manager for PennDOT.  He has operational control of PennDOT's maintenance activities for state roadways and bridges in Allegheny County, including budget and the payroll practices at issue here.  He has operational control over personnel, including the class members here.  Upon information and belief, Defendant Pampena has initiated and approved the practices complained of here which constitute violations of the FLSA.

21. PennDOT Highway Maintenance Workers and Transportation Equipment Operators perform general labor, and transport and operate vehicles involved in the construction and maintenance of state roads and highways.

22. PennDOT's Summer Maintenance and Construction Program ("Summer Program") runs from April through October, or November when weather permits.  During the Summer Program, Defendants assign Transportation Equipment Operators and Highway Maintenance Workers to particular work crews, each of which performs specialized work at multiple locations ("Worksites," as more fully defined below) within Allegheny County in District 11.

23. Worksites are the locations where work crews perform seasonal maintenance and undertake construction projects.  Depending on the complexity of the work and the size of the

location, work at a given Worksite can take days, weeks, or months to complete. Most work crews report to several Worksites over the duration of the Summer Program.

24. Examples of work crews include the Paving Crew, the Chipping Crew, and the Concrete Crew.

25. Plaintiffs and other members of the Collective Class are compensated on an hourly basis. Their work week officially consists of 37.5 hours per week, supplemented by overtime hours that must be approved by foremen.

26. Pursuant to the policies and practices of the Defendants, foremen are responsible for recording the time worked by each employee. However, before April 2016, Defendants did not permit foremen to record or authorize payment for time members of the Collective Class spent maintaining and transporting equipment and vehicles between regional storage facilities and Worksites at the beginning and end of their work days.

27. Defendants require that the vehicles and heavy equipment used at each Worksite be stored overnight and on weekends at regional storage facilities ("Yards" or "Sheds") within District 11.

28. During the Summer Program, Defendants require members of the Collective Class to transport vehicles and heavy equipment between the regional storage facilities and Worksites each morning and each evening.

29. Moreover, prior to transporting vehicles and equipment to the worksite, members of the Collective Class must complete a pre-utilization inspection of the vehicles and equipment, fill out what is referred to as the M-614 form, and load equipment and materials onto PennDOT vehicles for transport to the Worksite, a process which takes from fifteen minutes to an hour to

complete. Depending on traffic and the location of the Worksite, it takes Plaintiffs an additional ten to ninety minutes to transport PennDOT's vehicles and heavy equipment to the Worksite.

30. After their work ends at the Worksites, members of the Collective Class transport the vehicles and heavy equipment back to the Yard or the Shed. As the return trip often coincides with evening "rush hour," it can take twice as long as the initial trip. Upon their return, members of the Collective Class must record mileage and at times clean and/or perform maintenance on the heavy equipment.

31. For at least three years prior to April 2016, it was Defendants' practice and policy to give PennDOT employees who worked in Allegheny County and were responsible for transporting particular vehicles to Worksites the choice of parking those vehicles overnight and on weekends either at the Yard or Shed closest to their residence or at the Yard or Shed closest to the Worksite. Many employees appreciated this policy because it allowed for shorter commutes in their personal vehicles, and, therefore, lower commuting expenses.

32. Until April 2016, Defendants' practice was to direct foremen not to record the time members of the Collective Class spent transporting and maintaining vehicles and equipment both before the start of their shifts at the Worksite and after the end of their shifts at the Worksite. Defendants did not pay Plaintiffs for any of that time, including overtime.

33. The work performed by members of the Collective Class before they arrive and after they leave the Worksite is integral and indispensable to the work for which they were hired and is for Defendants' and PennDOT's benefit.

34. During Summer Programs before 2016, the uncompensated work performed by members of the Collective Class before they arrived and after they left the Worksite, when combined with their compensated work hours, resulted in Collective Class members working

well in excess of 40 hours per week. Pursuant to the FLSA, Defendants are obliged to compensate members of the Collective Class at time and one half for all hours in excess of 40 per week. Contrary to their FLSA obligations, Defendants have not compensated Collective Class members for any of this time, either at regular hourly rates or at time and one half.

35. Upon information and belief, Defendants failed to maintain appropriate records as required by the FLSA with respect to Collective Class members sufficient to determine wages, hours, and other conditions and practices of employment, in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

36. Defendants knew or showed a reckless disregard in failing to know that Collective Class members were working for the benefit of Defendants and PennDOT before they arrived at the Worksite and after they left the Worksite, as described above, and that PennDOT and Defendants were neither recording nor compensating Collective Class members for this time.

37. In April 2016, Defendants announced that they would pay District 11 employees on the work crews for the time spent maintaining PennDOT vehicles and transporting them between the Yards or Sheds and Worksites within Allegheny County during the 2016 Summer Program.

38. On April 27, 2016, Plaintiffs commenced this collective action.

39. On April 29, 2016, just one day after local newspapers reported that this lawsuit had been filed on the previous day, Defendant Pampena announced that each Allegheny County work crew must now park all PennDOT vehicles at one designated location when not in use. Employees no longer have the choice to park their assigned PennDOT vehicles either at the Yard or Shed closest to their residence or at the Yard or Shed closest to the Worksite.

40. For example, under District 11's new policy, the Paving Crew must park all PennDOT vehicles at Lovedale Yard overnight and on weekends for the time being. Upon information and belief, all the Paving Crew's Worksites during the first part of the Summer Program are located in the general vicinity of the Lovedale Yard.

41. This change to the vehicle parking policy angered many PennDOT employees.

42. On Thursday, May 5, 2016, one week after Plaintiffs filed this case, Defendant Pampena convened a mandatory meeting with the Paving Crew.

43. In addition to Defendant Pampena, Carmen Angotti, Lead Assistant County Manager for District 11, and Dean Schmidt, District 11's Assistant County Manager assigned to the Paving Crew, were also present at the mandatory meeting. Both Mr. Angotti and Mr. Schmidt report directly to Defendant Pampena, who in turn reports to the other named Defendants.

44. During the meeting, a Paving Crew member asked Defendant Pampena why District 11 management had changed its policy to require that all vehicles be stored at the Lovedale Yard.

45. Defendant Pampena explained that in response to this lawsuit, District 11 had changed its policy and now requires that all Paving Crew vehicles be stored at the Lovedale Yard.

46. Defendant Pampena then picked up a copy of the original Complaint in this action, which he had brought with him into the conference room, and held it out in front of him at arm's length for all meeting attendees to see.

47. Pampena commented that the lawsuit and Plaintiffs were responsible for the change in policy.

48. A number of meeting attendees were angry about this change in policy, which, upon information and belief, Defendant Pampena knew.

49. One member of the Paving Crew demanded that the managers tell the employees the Plaintiffs' names so that they could "take care of it."

50. Within Defendant Pampena's hearing, Mr. Angotti informed the meeting attendees that multiple Paving Crew members and District 11 employees are involved in the lawsuit. Mr. Pampena also said that the names are in the public record and could be found online by anyone who wanted to know.

51. Toward the end of the meeting, Defendant Pampena said, "Maybe we'll have another meeting in a month, maybe in three months. Maybe this thing will disappear and the policy will change again." At least one meeting attendee understood Mr. Pampena to be saying that if Plaintiffs dropped the lawsuit, employees would once again be able to park their PennDOT vehicles at the Yard or Shed closest to their residences.

52. At lunch after the meeting, a Paving Crew member walking between the tables was heard to say, "Names. Give me their names."

53. Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiffs and the Collective Class.

**COLLECTIVE ACTION ALLEGATIONS**

54. Plaintiffs bring this action under the FLSA, 29 U.S.C. § 216(b), as an "opt-in" collective action on behalf of similarly situated PennDOT employees and former employees who worked within PennDOT District 11 and who did not receive compensation for time and/or overtime that they expended for the benefit of Defendants and PennDOT before and/or after their

shifts, at any time within three years prior to this action's filing date through the final disposition of this case ("Collective Class").

55. At all relevant times, Plaintiffs and other members of the Collective Class are and have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices and procedures of willfully failing and refusing to record and pay for the time they required Plaintiffs and other members of the Collective Class to work "off the clock."

56. These Plaintiffs, individually and on behalf of other similarly situated workers, seek relief on a collective basis and challenge Defendants' policy and practice of failing to record and pay for time they worked to the benefit of their employers, before and after their shifts at the Worksites – transporting equipment between storage facilities and Worksites, maintaining that equipment, and keeping records relating to equipment and vehicles.

57. The number and identity of other persons yet to opt-in and consent to be party plaintiffs may be determined from PennDOT records under the control of Defendants, and potential class members may easily and quickly be notified of the pendency of this action by electronic and regular mail.

58. Since filing the original Complaint in this action, which was accompanied by five signed Consents of additional persons consenting to become Plaintiffs in this action, Plaintiffs have filed two signed additional Consents on behalf of Frank Maringo and Robert Case. (Dkt. 5 and 6).

59. Plaintiffs intend to undertake appropriate action pursuant to 29 U.S.C. § 216(b) to have members of the Collective Class notified of the pendency of this action so they may join this action as plaintiffs by filing written consents to joinder with the Court.

## COUNT ONE

## Fair Labor Standards Act – Wage Violations

60. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

61. At all times relevant to this matter, Defendants were "employers" within the meaning of 29 U.S.C. § 203(d).

62. At all times relevant to this matter, members of the Collective Class were employees of Defendants within the meaning of 29 U.S.C. § 203(e).

63. Under the FLSA, an employer must pay an employee wages for all time permitted or suffered to work.

64. Under the FLSA, an employer must pay an employee at least one and one half (1½) times his or her regular rate of pay for each hour worked in excess of forty (40) hours per workweek.

65. The overtime wage provisions set forth in the FLSA apply to Defendants and the positions held by members of the Collective Class are not exempt from the FLSA's overtime compensation requirements.

66. Defendants have engaged in a willful practice of violating the FLSA by requiring and/or permitting members of the Collective Class to work before and beyond the end of their shift without compensation and without paying them for properly calculated regular rate wages and/or overtime rate compensation.

67. Defendants' conduct in failing and refusing to properly compensate members of the Collective Class for work performed before and after their shifts is willful and not based on any reasonable interpretation of the law.

68. As a result of Defendants' willful acts, members of the Collective Class have been deprived of overtime compensation and other wages in amounts to be determined, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

69. Records pertinent to calculating the number of excess hours worked by members of the Collective Class and the compensation they received are in the possession and control of Defendants and their agents. Plaintiffs, therefore, are unable to state, until discovery is obtained, the exact amounts owed to members of the Collective Class.

## COUNT TWO

### Fair Labor Standards Act – Retaliation

70. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

71. The FLSA prohibits employers from discriminating against any employee because of that employee's participation in a lawsuit brought under the FLSA. 29 U.S.C. § 215(a)(3).

72. Plaintiffs' initiation of this lawsuit satisfies the requirement of filing a complaint or instituting any proceeding under 29 U.S.C. § 215(a)(3).

73. After Plaintiffs initiated this complaint, Defendants retaliated against them by instituting a vehicle parking policy which has angered many members of the Collective Class.

74. Additionally, Defendant Pampena and subordinates acting under his control further retaliated against Plaintiffs when they sought to incite animosity at the May 5 meeting among members of the Collective Class against Plaintiffs by blaming them for the unpopular new parking policy. This conduct made Plaintiffs fearful that management and coworkers

16

encouraged by management would further retaliate against them due to their choice to participate in the lawsuit.

75. Both of these incidents constitute materially adverse employment actions which were, upon information and belief, motivated by Plaintiffs' exercise of their rights under the FLSA, and which also would dissuade a reasonable employee from complaining of FLSA violations.

76. The change in District 11's parking policy occurred two days after the initiation of this lawsuit, and one day after the lawsuit received coverage in the local media.

77. Defendant Pampena convened the May 5 mandatory meeting, where he and those acting under his control blamed the lawsuit and Plaintiffs for the unpopular change in policy, just eight days after Plaintiffs initiated this action.

78. Defendants' violations of the FLSA were intentional and undertaken with reckless indifference to Plaintiffs' right not to be retaliated against for making claims under the FLSA.

79. Plaintiffs are entitled to economic damages for increased commuting expenses, compensatory damages for emotional distress, liquidated damages, punitive damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and similarly situated employees of Defendants, pray for the following relief:

A. That the Court declare, adjudge, and decree that this action is a proper FLSA collective action and certify the proposed class pursuant to 29 U.S.C. § 216;

B. That, at the earliest possible time, the Court issue notice to, or permit Plaintiffs to notify, all persons in the FLSA Collective Action Class that this civil action has been filed, the nature of the action, and their right to join this lawsuit if they believe they were denied proper wages;

C. That the Court declare, adjudge, and decree that (1) Defendants have willfully, intentionally and wrongfully violated their statutory obligations and deprived Plaintiffs and other members of the Collective Class of their entitlement under the FLSA; (2) Plaintiffs and the Collective Class were and are, at all relevant times, entitled to be paid wages for all hours worked and overtime for all work beyond 40 hours per week; and (3) the amount of unpaid wages and overtime to which Collective Class members are entitled is to be doubled as liquidated damages and awarded thereto;

D. That the Court award to members of the Collective Class damages and/or restitution for the amount of unpaid compensation, including overtime compensation, and including pre and post judgment interest thereon, and penalties in an amount to be proven at trial;

E. That the Court award to Plaintiffs compensatory and punitive damages for Defendants' retaliation against them, including pre and post judgment interest in an amount to be proven at trial;

F. That the Court award to Plaintiffs and the Collective Class attorneys' fees and costs of the action, to be paid by Defendants; and,

G.      That the Court enter such other relief as this Court shall deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

Respectfully submitted,

Dated: June 1, 2016

/s/ Edward J. Feinstein
Edward J. Feinstein (PA No. 29718 )
efeinstein@fdpklaw.com
Pamina Ewing (PA No. 59244)
pewing@fdpklaw.com
Deborah Marcuse (NY No. 4799649)
dmarcuse@fdpklaw.com
Sarah Martin (PA No. 316419)
smartin@fdpklaw.com
FEINSTEIN DOYLE PAYNE
  & KRAVEC, LLC
Allegheny Building, 17th Floor
429 Forbes Ave.
Pittsburgh, PA 15219
T: (412) 281-8400
F: (412) 281-1007

Kevin W. Tucker (PA No. 312144)
kevin@dkplaw1.com
DARREN K. PARR LAW FIRM
967 Liberty Avenue, Floor 2
Pittsburgh, PA 15222
T: (412) 566-1245
F: (412) 566-1085

*Attorneys for Plaintiffs*